UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREEN ALLIANCE TAXI CAB
ASSOCIATION, INC., et al.,

Plaintiffs,

v.

KING COUNTY, et al.,

Defendants.

CASE NO. C08-1048RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 21, 24). The court has considered the parties' briefing and supporting evidence, and has heard from counsel at oral argument. For the reasons explained below, the court DENIES Plaintiffs' motion for summary judgment (Dkt. # 21), GRANTS the King County's motion for summary judgment (Dkt. # 24), GRANTS the City of Seattle's motion for judgment (Dkt. # 41), and GRANTS the Plaintiffs' motion for leave to amend (Dkt. # 34) .

ORDER – 1

## II. BACKGROUND[1]

Plaintiff Green Alliance Taxi Cab Association, Inc. ("Green Alliance") is a Washington corporation formed to represent the interests of non-owner taxicab drivers in Seattle and King County. Plaintiff Seattle Taxi Owners Association ("STOA") represents the interests of Seattle and King County taxicab owners and owner/operators. Green Alliance and STOA filed this lawsuit to challenge Defendant King County's issuance of taxicab licenses pursuant to a local rule.

King County and Defendant City of Seattle ("the City") regulate taxicab licensing in accordance with a cooperative agreement. *See* RCW 81.72.220. The County issues for-hire driver licenses and the City issues taxicab vehicle licenses. A Seattle taxi license owner must affiliate with a taxicab association with at least fifteen members.

King County Code ("KCC") 6.64.700(B) provides that the total number of taxicab licenses shall not exceed 561, and that the new licenses shall not be issued from the pool of "reverted" licenses (previously issued licenses that have been returned to the County for reasons including the death or disqualification of the license owner) unless the County determines "that there is a demand for additional taxi service."

If the County determines that there is demand for additional taxi service, then executive services director "may issue all or a portion of those licenses through a request for proposals process designed to test alternatives to the current local taxi industry model." KCC 6.64.700(C)(2).

In approximately May 2007, the County issued a notice of intent to adopt Administrative Rule LIC 8-3, titled "Testing Alternative Ways of Restructuring Taxi Associations." In paragraph 6.1 of the proposed rule, the County proposed distributing reverted taxi licenses to associations whose "ownership/management" are persons "who are not current taxicab licensees in King County or the City of Seattle." The notice of

---

[1] The court recited the facts of the case in a previous order (Dkt. # 11), but will reiterate those facts here for the sake of clarity.

ORDER – 2

intent solicited written comments from "persons interested in obtaining a taxi license under a program to test alternative ways of structuring taxi associations."

During May and June 2007, the County received written comments about Rule LIC 8-3 from numerous parties. On approximately July 6, 2007, the County sent surveys about the test project to numerous entities that had expressed interest in participating in the test project. Green Alliance and STOA submitted completed surveys.

The County adopted the final version of Rule LIC 8-3 on September 20, 2007. The rule set out the requirements that associations must satisfy if they are selected to participate in the test project. On September 21, the County wrote a letter stating that Green Cab Taxi & Disabled Service ("Green Cab") had been selected to receive 50 new licenses under Rule LIC 8-3.

Two taxi associations filed a lawsuit against the County in King County Superior Court, contending that the County had violated the KCC by not issuing a request for proposals ("RFP") for its test project before selecting Green Cab.

On March 6, 2008, the County issued an RFP, which provided that licenses would be issued to an association whose ownership/management were not current taxicab licensees in the County or the City. The RFP also required that the taxi association selected must comply with Rule LIC 8-3 § 6.4.2, which requires it to "agree . . . to recognize and bargain with the collective bargaining agent for [its] drivers/employees." Neeleman Decl. (Dkt. # 22), Ex. C (the RFP). The RFP furthermore required that the taxi association selected must agree to utilize hybrid electric vehicles "with a minimum rating of 40 miles per gallon in the city." Rule LIC 8-3 § 6.4.4. Green Alliance responded to the RFP.

On May 23, 2008, the County issued a press release stating that it selected Green Cab to receive the licenses to be issued under the RFP. One of the RFP graders was County Chief Administrative Officer James Buck, who had originally selected Green Cab

ORDER – 3

prior to the RFP process. Buck awarded Green Cab a perfect score on the RFP. No other grader gave Green Cab a perfect score, but all graders gave Green Cab the highest or tied with the highest score.

Green Alliance and STOA filed this lawsuit, requesting that the court invalidate Rule LIC 8-3 and enjoin the County from issuing licenses to Green Cab. The court denied the Plaintiffs' motion for a temporary restraining order, and the parties have now cross-moved for summary judgment.

### III. ANALYSIS

**A. Standard of Review on Summary Judgment.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

**B. NLRA Preemption Does Not Invalidate Rule LIC 8-3 or the RFP Process.**

Plaintiffs contend that Rule LIC 8-3 § 6.4.2 and the RFP requirement incorporating that section are preempted by the National Labor Relations Act ("NLRA") because they require that the selected taxi association must recognize and bargain with the collective bargaining agent of its drivers/employees. The Defendants contend that Section 6.4.2 is consistent with the NLRA because the NLRA itself requires employers to recognize and bargain with their employees' collective bargaining agents, and is therefore a redundant requirement. But according to the Plaintiffs, even a redundant requirement conflicts with the National Labor Relations Board's exclusive authority to regulate labor union activity, so Section 6.4.2 is nonetheless preempted and therefore invalid.

ORDER – 4

Plaintiffs cite *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 619 (1986), to support their position. In that case, a city refused to renew a taxicab company's franchise until it settled a labor dispute with its drivers. *See id.* at 609. The court held that the city's action interfered with the labor-management dispute resolution process, a process that Congress intended to keep free from state action. *See id.* at 618.

*Golden State Transit* is factually distinguishable from this case, because Rule LIC 8-3 does not address an ongoing dispute. Section 6.4.2 requires only that a taxi association recognize its employees' collective bargaining agent, which is an NLRA requirement. *See* 29 U.S.C. § 158(a)(5). Section 6.4.2 does not require a taxi association to recognize a union that would not be recognized as a collective bargaining agent under the NLRA.

But Plaintiffs also cite *Wisconsin Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, which holds that the NLRA prevents states from "providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the [NLRA]." 475 U.S. 282, 286 (1986). The Plaintiffs contend that the KCC authorizes regulatory remedies for violations of Section 6.4.2, because the KCC provides that the licenses may be revoked if the licensee fails to comply with Rule LIC 8-3. *See* KCC 6.01.040. Thus, according to Plaintiffs, even if Section 6.4.2 is consistent with the NRLA and merely redundant, the regulatory enforcement mechanism is clearly prohibited.

The County agrees that it would be preempted from enforcing Section 6.4.2, but emphasizes that Rule LIC 8-3 does not require the County to enforce that section. According to the County, that Section 6.4.2 cannot be enforced does not necessarily mean that it is preempted as an intrusion into NRLA territory.

The court agrees. The Plaintiffs have not cited any authority and the court is not aware of any authority for the proposition that a local statute's restatement of an NLRA requirement renders the statute invalid. Though the Plaintiffs contend that *Golden State*

ORDER – 5

is directly on point, the city's requirement in that case went far beyond a restatement of an NLRA requirement and directly interfered in an ongoing labor dispute.

Thus, the court has no basis to invalidate all of Rule LIC 8-3 or the RFP because of one unenforceable or invalid provision. Because the Plaintiffs have not shown that the County took any action to enforce Section 6.4.2 during the RFP process or at any time since, Section 6.4.2 does not provide a basis for invalidating the entire Rule or reversing the RFP process, as requested by the Plaintiffs. Thus, Plaintiffs' claim for relief based on NLRA preemption fails.

**C.     The RFP Process was Not Arbitrary or Capricious.**

Plaintiffs contend they were entitled under state law to a fair RFP process, but that Mr. Buck's conduct violated that right. *See Equitable Shipyards, Inc. v. Dep't of Transp.*, 93 Wn.2d 465, 474 (1980) (applying the arbitrary and capricious standard to judicial review of a public bidding process).[2] An action is arbitrary and capricious if it is a "willful and unreasoning action, without consideration and in disregard of facts or circumstance." *Id*. (quoting *DuPont-Ford Lewis Sch. Dist. 7 v. Bruno*, 79 Wn.2d 736, 739 (1971)). Plaintiffs contend that Mr. Buck's bias — as evidenced by the perfect score he gave Green Cab on the RFP, and the fact that he selected Green Cab prior to the RFP — tainted the entire RFP process to cause an arbitrary and capricious result.

This evidence does not show that Mr. Buck's conduct rendered the RFP process arbitrary and capricious, however. Plaintiffs' relies only on evidence of the conduct of Mr. Buck, and does not show that he controlled or influenced the other graders. If Mr. Buck's grades were ignored, the result based on the other graders' scores would have been the same. *See* Leach Decl. (Dkt. # 26) ¶ 3, Ex. B. Mr. Buck's pre-RFP selection of Green Cab is not relevant to whether the RFP process itself was fair, without any

---

[2] The Plaintiffs previously framed this issue as a due process claim, but now relies upon state case law ensuring fair public bidding procedures. *Compare* Pltfs.' Mot. (Dkt. # 21) at 17 *with* Pltfs.' Opp'n (Dkt. # 35) at 7-8.

ORDER – 6

evidence that Mr. Buck influenced the other graders as a result of his preference for Green Cab. Because there is no evidence before the court that the RFP process was conducted without consideration and in disregard of facts or circumstance, the court has no basis to conclude that its outcome was arbitrary and capricious. The Plaintiffs' claim fails as a matter of law.

**D.  Rule LIC 8-3 § 6.1 Bears a Rational Relationship to Legitimate Government Ends.**

The Plaintiffs also challenge the RFP process — specifically Rule LIC 8-3 § 6.1's exclusion of current license holders from the process — on the grounds that because there is no rational relationship between the exclusion and legitimate government ends, the exclusion violates either Washington's privileges and immunities clause, the federal Equal Protection Clause, or amounts to an unlawful exercise of police powers. *See* Wash Const. art. I, § 12 (the privileges and immunities clause), U.S. Const. Amend. 14 (equal protection clause); *see also Weden v. San Juan County*, 135 Wn.2d 678, 700 (1998).

The County contends that Section 6.1 is rational because the County intended to test an alternative to the current structure, and non-license holders can execute this test. The Plaintiffs agreed at oral argument that the County has a valid interest in testing alternatives to the current structure, but contends that current license holders, including STOA, could test an alternative just as well as non-license holders. And while that may be true, it does not establish that the testing alternatives using non-license holders is irrational. Because the County's legitimate interest can be served by excluding non-license holders, there is a rational relationship between the interest and the exclusion. No further inquiry into the justification for the exclusion is required. *See State ex rel. Faulk v. CSG Job Center*, 117 Wn.2d 493, 505-06 (1991) (holding that courts do not weigh whether a statute is wise, but only to whether there is a rational connection between the

ORDER – 7

purpose of the statute and the methods it uses to accomplish that purpose). Therefore, the Plaintiffs' challenge to Section 6.1 must fail.

**E.  The City is Entitled to Judgment on the Pleadings.**

The City moved for judgment on the pleadings on the ground that the Plaintiffs failed to state a claim against the City. *See* Def.'s Mot. (Dkt. # 41). According to the City, none of the Plaintiffs' claims are based on the City's conduct, but instead are entirely focused on the County. Though the City acknowledges that it performs ministerial functions under an interlocal agreement with the County, it argues that the Complaint does not allege a breach of the City's obligations under that agreement or request any relief from the City.

The Plaintiffs object to the City's dismissal, contending that the interlocal agreement and RCW 81.72.220 require the City and the County to jointly administer taxicab licenses. But to the contrary, RCW 81.72.220 only provides that interlocal agreements *may* grant joint taxicab licenses, but joint taxicab licenses are not at issue here. The taxicab licenses at issue here may be granted only by the County's executive services director, not the City. *See* KCC 6.64.010, 6.64.700. Because the Plaintiffs' claims relate to taxicab licenses issued by the County and a rule enacted by the County, the Plaintiffs' claims do not implicate the City.

The court agrees that the Complaint does not assert any claims against the City or predicate its claims on any City action, and the request for injunctive relief also addresses only the County. As the City has made clear, there is no evidence that the City was involved in the creation of Rule LIC 8-3 or the RFP process, or that it is involved in any enforcement of the Rule. Because the Complaint does not allege any claims against the City or request any relief from the City, the court will grant the City's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

ORDER – 8

**F.     The Plaintiffs May Amend Their Complaint.**

The Plaintiffs moved to amend their complaint to add an additional claim of federal preemption. *See* Pltfs.' Mot. (Dkt. # 34). The County opposes the motion on futility grounds, contending that the proposed additional claim is not supported by law. The parties subsequently re-briefed this motion in light of new supplemental authority. *See* Pltfs.' Supp. Br. (Dkt. # 54), Defs.' Supp. Br. (Dkt. # 55).

Plaintiffs' new claim is based on Rule LIC 8-3's requirement that the selected association agree to purchase hybrid vehicles. The Plaintiffs contend that the Federal Energy Policy and Conservation Act ("EPCA"), 49 U.S.C. § 32901, preempts the Rule's hybrid requirement (Section 6.4.4), and cite *Metro. Taxicab Bd. of Trade v. New York*, 2009 WL 1748871 (S.D. N.Y. June 22, 2009), as support. In that case, the court preliminarily enjoined a New York regulation effectively mandating that taxicab owners buy only hybrid vehicles. *Id*. at *3.

The County contends that *Metro. Taxicab* is not analogous to this case because Section 6.4.4 only requires that a subset of all taxicab licensees purchase hybrid vehicles. Because participation in the RFP under Rule LIC 8-3 was voluntary, the County contends that Section 6.4.4 is not a mandate. The EPCA preempts state and local regulations related to "fuel economy standards." Because the County contends that Section 6.4.4 did not set a fuel economy *standard* because it did not mandate the use of hybrid vehicles uniformly, it contends that EPCA preemption does not apply here. The Plaintiffs' disagree, analogizing *Metro. Taxicab* to the facts of this case. According to the Plaintiffs, the taxicab licensees affected by the regulation in *Metro. Taxicab* were also a subset of the entire industry.

Without reaching the merits of the Plaintiffs' new claim under the EPCA, the court finds that adding the claim would not be futile and thus the Plaintiffs are entitled to leave to amend and fully address the merits of their claim in future briefing. *See* Fed. R. Civ.

ORDER – 9

P. 15(a) (leave to amend should be "freely given when justice so requires"); *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (in considering whether to grant leave to amend, a court should consider the moving party's undue delay, dilatory motive, bad faith, or repeated failure to cure deficiencies despite previous amendments; the futility of amendment; and any undue prejudice that amendment would cause to the opposing party). Because the court has no basis to definitively conclude at this stage that the EPCA claim would be inevitably subject to dismissal, the court will grant the Plaintiffs' motion for leave to amend their complaint.

### III. CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' motion (Dkt. # 21), GRANTS Defendant's motion (Dkt. # 24), GRANTS Defendant's motion (Dkt. # 41) for judgment on the pleadings, and GRANTS Plaintiffs' motion (Dkt. # 34) for leave to amend. The Plaintiffs may file an amended complaint no later than October 16, 2009.

DATED this 30th day of September, 2009.

The Honorable Richard A. Jones
United States District Judge

ORDER – 10