HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREEN ALLIANCE TAXI CAB
ASSOCIATION, INC., et al.,

    Plaintiffs,

    v.

KING COUNTY,

    Defendant.

CASE NO. C08-1048RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 61, 64). Plaintiffs requested oral argument; Defendant did not. The court finds these motions suitable for disposition based solely on the parties' briefing and supporting evidence. For the reasons explained below, the court DENIES Plaintiffs' motion for summary judgment (Dkt. # 61) and GRANTS King County's motion for summary judgment (Dkt. # 64).

## II. BACKGROUND[1]

Plaintiff Green Alliance Taxi Cab Association, Inc. ("Green Alliance") is a

---

[1] The court recited the facts of the case in a previous order (Dkt. # 11), but will reiterate those facts here for the sake of clarity.

ORDER – 1

Washington corporation formed to represent the interests of non-owner taxicab drivers in Seattle and King County. Plaintiff Seattle Taxi Owners Association ("STOA") represents the interests of Seattle and King County taxicab owners and owner/operators. Plaintiffs filed this lawsuit to challenge Defendant King County's issuance of taxicab licenses pursuant to a local rule.

King County and Defendant City of Seattle ("the City") regulate taxicab licensing in accordance with a cooperative agreement. *See* RCW 81.72.220. The County issues for-hire driver licenses and the City issues taxicab vehicle licenses. A Seattle taxi license owner must affiliate with a taxicab association with at least fifteen members.

King County Code ("KCC") 6.64.700(B) provides that the total number of taxicab licenses shall not exceed 561, and that the new licenses shall not be issued from the pool of "reverted" licenses (previously issued licenses that have been returned to the County for reasons including the death or disqualification of the license owner) unless the County determines "that there is a demand for additional taxi service."

If the County determines that there is demand for additional taxi service, the executive services director "may issue all or a portion of those licenses through a request for proposals process designed to test alternatives to the current local taxi industry model." KCC 6.64.700(C)(2).

In approximately May 2007, the County issued a notice of intent to adopt Administrative Rule LIC 8-3, titled "Testing Alternative Ways of Restructuring Taxi Associations." In paragraph 6.1 of the proposed rule, the County proposed distributing reverted taxi licenses to associations whose "ownership/management" are persons "who are not current taxicab licensees in King County or the City of Seattle." The notice of intent solicited written comments from "persons interested in obtaining a taxi license under a program to test alternative ways of structuring taxi associations."

During May and June 2007, the County received written comments about LIC 8-3

ORDER – 2

from numerous parties.  On approximately July 6, 2007, the County sent surveys about the test project to numerous entities that had expressed interest in participating in the test project.  Green Alliance and STOA submitted completed surveys.

The County adopted the final version of Administrative Rule LIC 803 on September 20, 2007.  The rule set out the requirements that associations satisfy if they are selected to participate in the test project.  On September 21, the County wrote a letter stating that Green Cab Taxi & Disabled Service ("Green Cab") had been selected to receive 50 new licenses under Rule LIC 8-3.

Two taxi associations filed a lawsuit against the County in King County Superior Court, contending that the County had violated the KCC by not issuing a request for proposals ("RFP") for its test project before selecting Green Cab.

On March 6, 2008, the County issued an RFP, which provided that licenses would be issued to an association whose ownership/management were not current taxicab licensees in the County or the City.  The RFP also required that the taxi association selected must "agree . . . to recognize and bargain with the collective bargaining agent for [its] drivers/employees."  Neeleman Decl. (Dkt. # 22), Ex. C (the RFP).  The RFP furthermore required that the taxi association selected must agree to utilize hybrid electric vehicles "with a minimum rating of 40 miles per gallon in the city."  Rule LIC 8-3 § 6.4.4.  Green Alliance responded to the RFP.

On May 23, 2008, the County issued a press release stating that it selected Green Cab to receive the licenses to be issued under the RFP.  One of the RFP graders was County Chief Administrative Officer James Buck, who had originally selected Green Cab prior to the RFP process started.  Buck awarded Green Cab a perfect score on the RFP.  No other grader gave Green Cab a perfect score, but all graders gave Green Cab the highest (or tied with the highest) score compared to the other applicants.

Green Alliance and STOA filed a lawsuit, requesting that the court invalidate Rule

ORDER – 3

1   LIC 8-3 and enjoin the County from issuing licenses to Green Cab.  The court denied the
2   Plaintiffs' motion for a temporary restraining order, and the parties then cross-moved for
3   summary judgment.  The court denied Plaintiffs' motion for summary judgment (Dkt. #
4   21), granted the County's motion for summary judgment (Dkt. # 24), granted the
5   County's motion for judgment on the pleadings (Dkt. # 41), and granted Plaintiffs'
6   motion for leave to amend (Dkt. # 34).

   Plaintiffs Green Alliance and STOA amended their complaint (Dkt. # 58) to
include a claim that the fuel efficiency requirements set forth in Rule LIC 8-3 and the
RFP are preempted by the automobile fuel economy provisions of the Energy Policy and
Conservation Act of 1975 ("EPCA"), 49 U.S.C. §§ 39,201-39,219.  Plaintiffs then moved
for summary judgment (Dkt. # 61) on the new claim, and the County cross-moved for
summary judgment (Dkt. # 64).

   The court now turns to the parties' cross-motions for summary judgment.

### III.   ANALYSIS

**A.   Standard of Review on Summary Judgment.**

   Summary judgment is appropriate if there is no genuine issue of material fact and
the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The
moving party bears the initial burden of demonstrating the absence of a genuine issue of
material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving
party meets that initial burden, the opposing party must then set forth specific facts
showing that there is a genuine issue of fact for trial in order to defeat the motion.
*Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

**B.   EPCA Does Not Preempt Rule LIC 8-3 or the RFP Process.**

   Plaintiffs contend that Rule LIC 8-3 and the RFP are preempted by the Energy
Policy and Conservation Act ("EPCA") because EPCA contains the following
preemption clause:

ORDER – 4

> When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

49 U.S.C. § 32,919(a).

Rule LIC 8-3 imposed the following "special conditions" upon successful respondents to the RFP:

> 6.4.4   Must utilize taxicab vehicles which are…hybrid electric vehicles with a minimum rating of 40 miles per gallon in the city; no older than three (3) years at the time of licensing; and, in no case, may be in operation as a taxicab beyond eight (8) years of age; provided, however, that the taxi association may operate, up to but not exceeding 10% of the total licenses issued pursuant to this test as hybrid electric vehicles with a minimum rating of 32 miles per gallon in the city; and,
>
> 6.4.5   Must provide 10% of the number of reverted licenses issued as wheelchair accessible vehicles; provided, however, the requirements of 6.4.4. above, are waived until hybrid vehicles capable of meeting the ADA accessibility regulations and 6.4.4. are available commercially, whereupon, the ADA and 6.4.4. compliant vehicles must be used within one year of their commercial availability.

*See* Neeleman Decl., Ex. C.  Plaintiffs contend that because these sections of Rule LIC 8-3 impose mandatory fuel economy requirements, they "relate to" fuel economy standards and thus run afoul of EPCA.  *See* Pltfs.' Mot. Summ. J. (Dkt. # 61) at 7.  Plaintiffs claim that EPCA is an example of "express preemption," which is one of the three bases courts typically use in finding Congressional intent to preempt local law.  *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (listing the three bases for federal preemption of local law: express preemption, field preemption, and conflict preemption).

Defendants contend that Rule LIC 8-3 and the RFP are consistent with EPCA because Congress in enacting EPCA did not intend to preempt a "voluntary incentive program to utilize hybrid taxicabs."  Defs.' Reply (Dkt # 66) at 2.  But according to the Plaintiffs, Rule LIC 8-3 and the RFP are mandatory, not voluntary, so EPCA preempts them.  *See* Pltfs.' Mot. Summ. J. (Dkt. # 61) at 7-11.

ORDER – 5

As support for this proposition, Plaintiffs cite *Metropolitan Taxicab Board of Trade v. City of New York*, No. 08 Civ. 7837, 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008) ("*Metropolitan Taxicab I*"); *Metropolitan Taxicab Board of Trade v. City of New York*, 633 F. Supp. 2d 83 (S.D.N.Y. 2009) ("*Metropolitan Taxicab II*"); and *Ophir v. City of Boston*, 647 F. Supp. 2d 86 (D. Mass. 2009). *Metropolitan Taxicab I* involved a regulation promulgated by the New York City Taxicab & Limousine Commission (TLC); the regulation required *all* new taxicabs to meet a minimum fuel efficiency standard by certain deadlines. 2008 WL 4866021 at *2. The effect of the regulation was essentially to mandate that all taxicabs be hybrids by the end of the transition period, because only hybrids could meet the fuel efficiency standard. The court found that such rules "set standards that relate to an average number of miles that New York City taxicabs must travel per gallon of gasoline." *Id.*, 2008 WL 4866021 at *9. The court also found that the rules imposed a mandate on taxicabs. *Id.*, 2008 WL 4866021 at *11. The court concluded that the rules were most likely preempted by EPCA and thus the plaintiffs showed a likelihood of success on the merits of their claim. *Id.*, 2008 WL 4866021 at *12.

In *Metropolitan Taxicab II*, the court considered whether the TLC could impose new regulations to provide financial incentives for taxicab fleet owners to purchase hybrid vehicles. The new regulations increased the lease rate for taxi fleet owners who purchased hybrid taxis and reduced the lease rate for owners who continued to use non-hybrid vehicles. *Metropolitan Taxicab II*, 633 F. Supp. 2d at 85. In deciding the case, the court followed the rule that "a local law is preempted if it directly regulates within a field preempted by Congress, or if it indirectly regulates within a preempted field in such a way that effectively mandates a specific, preempted outcome." *Id.*, 633 F. Supp. 2d at 95. The court found that the financial incentives to purchase hybrids and the disincentives for using non-hybrids amounted to a mandate requiring taxi fleet owners to

ORDER – 6

purchase hybrids, and that the plaintiffs were likely to succeed in showing that the TLC rules were related to fuel economy standards and thus preempted by EPCA. However, the court was careful to clarify which types of rules were *not* preempted by EPCA. The court noted that cities may establish programs to incentivize (but not mandate) the purchase of certain types of taxis. *Id.*, 633 F. Supp. 2d at 87. Citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), and *California Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316 (1997), the *Metropolitan Taxicab II* court held that a local law "is not preempted when it only indirectly regulates parties within a preempted field and *presents regulated parties with viable, non-preempted options*." *Metropolitan Taxicab II*, 633 F. Supp. 2d at 95-96 (emphasis added). If a regulation "alters the incentives, but does not dictate the choices" facing regulated parties, then the regulation is not a mandate preempted by EPCA. *Id.*, 633 F. Supp. 2d at 95 (quoting *Dillingham*, 519 U.S. at 334).

In *Ophir*, the city of Boston implemented a rule that each taxi placed in service after August 2008 must be a hybrid, and due to the city's mandatory taxi retirement procedures, the rule effectively mandated that all taxis in the city would be hybrids by 2015. 647 F. Supp. 2d at 87-88. The court cited the *Metropolitan Taxicab* decisions with favor and found that Boston's rule imposed a requirement even more stringent than the financial incentives found to be preempted in *Metropolitan Taxicab II*. *Id.*, 647 F. Supp. 2d at 91. The court noted that "[w]hile there is no doubt but that regulation of taxis is traditionally a local matter, the [Boston hybrid requirement] regulates in an area of significant federal presence – fuel economy." *Id.*, 647 F. Supp. 2d at 91-92.

Contrary to Plaintiffs' contention that the fuel economy requirements in LIC 8-3 are analogous to the regulations in the above cases, and thus preempted by EPCA, those cases are factually distinguishable from this case. *Metropolitan Taxicab I* and *Ophir* involved local regulatory programs mandating that *all* taxicabs meet fuel efficiency

ORDER – 7

requirements or be hybrid vehicles by certain dates.  The rule in *Metropolitan Taxicab II* admittedly only affected fleet owners (and presumably not individual owners), but for those fleet owners, the rule essentially mandated the purchase of hybrid taxis by creating a strong combination of financial incentives and disincentives.  Thus, the courts handling these cases all found that the regulations imposed mandates on the regulated parties.

In contrast, here King County implemented a voluntary incentive program.  The program is small in scope, involving the issuance of a mere 50 taxicab licenses.  LIC 8-3 allows entities to opt in to a licensing program and adopt its requirements.  LIC 8-3 does not require Plaintiffs or any other taxicab owner to do anything – they can choose to enter the program and follow the fuel efficiency rule or refrain from entering the program and not be bound by the rule.  Plaintiffs have other means of obtaining taxi licenses, namely purchasing or otherwise transferring them on the open market.  Per the reasoning in *Metropolitan Taxicab II*, a rule incentivizing the purchase or use of hybrid vehicles is legitimate as long as it does not compel or bind parties to a particular choice.  Here, LIC 8-3 establishes a voluntary program and does not constitute a mandate applicable to the entire taxi industry.

Plaintiffs contend that LIC 8-3 *directly* regulates fuel economy standards and thus is automatically preempted per the reasoning in *Metropolitan II*.  They argue that the court need not address whether LIC 8-3 indirectly regulates to effectively mandate a preempted outcome.  Here, the court finds that LIC 8-3 does not directly regulate fuel economy standards.  The County merely established a test program and gave interested parties the opportunity to participate in this alternative if they met all of the requirements imposed by LIC 8-3.  Parties chose whether to apply for the program, and the fuel economy standards do not regulate the entire taxicab industry.  At most, LIC 8-3 is an indirect regulation, and even if that is true, the program does not amount to a mandate and thus is not comparable to the programs in the cases cited by Plaintiffs.

ORDER – 8

According to the cases summarized above, only a mandate can be a legal regulation "related to" fuel economy standards and thus preempted by EPCA. *See Metropolitan Taxicab II*, 633 F. Supp. 2d at 93 (noting that a preemption analysis is irrelevant if a particular rule is not a mandate, because the rule "is not forcing [the regulated parties] to take any new action - much less a potentially preempted action."). A voluntary program incentivizing the purchase of higher-fuel-economy vehicles, as was implemented by King County, is not a mandate and thus the court need not further engage in a preemption analysis. Because the court concludes that EPCA does not apply, the Plaintiffs' remaining claim fails as a matter of law.

### III.  CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' motion (Dkt. # 61) and GRANTS Defendant's motion (Dkt. # 64). The court directs the clerk to enter judgment for Defendant.

DATED this 28th day of June, 2010.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 9